Leo J. Feistel v. Commissioner.
Feistel v. Commissioner
Docket No. 1511.
United States Tax Court
1945 Tax Ct. Memo LEXIS 319; 4 T.C.M. (CCH) 114; T.C.M. (RIA) 45035; January 27, 1945
*319 In the taxable year petitioner was in partnership with his wife in the conduct of an insurance brokerage business in New York City. The wife was not active in service in the business and its earnings were due primarily to the personal services of petitioner and the use of capital was not a substantial income producing factor. Held, following Earp v. Jones, 131 Fed. (2d) 292 and Mead v. Commissioner, 131 Fed. (2d) 323, the entire net income of the partnership is taxable to petitioner. Humphreys v. Commissioner, 88 Fed. (2d) 430 distinguished. John A. Ross, Jr., Esq., for the petitioner. Laurence F. Casey, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in income tax against petitioner for the year 1939 of $926.02. The deficiency is due to three adjustments which the Commissioner made to the net income as disclosed by the petitioner's income tax return for the year 1939. These adjustments were: Unallowable deductions and additional income: (a) Business income
$7,824.36
(b) Error
5.00
(c) Contributions
100.00
Petitioner does *320 not contest adjustments (b) and (c). He only contests adjustment (a). That adjustment was explained in the deficiency notice as follows: (a) It is held that the L. J. Feistel & Company, 84 William Street, New York, New York, an alleged partnership with your wife and yourself as partners, is in substance and reality your sole business and that its entire net income is properly taxable to you. * * * Petitioner by an appropriate assignment of error contests the correctness of the foregoing determination by the Commissioner. Findings of Fact The petitioner, Leo J. Feistel, is an individual residing in Verona, New Jersey. The return for the year here involved was filed with the Collector of Internal Revenue, Newark, New Jersey. Some time during 1927 Leo J. Feistel & Co. originally started in the insurance business as a partnership consisting of Leo J. Feistel and Herman M. Yost. During the year 1930 Alice V. Feistel, wife of Leo J. Feistel, advanced to the former partnership about $3,000 out of her own separate funds which was never repaid. A corporation known as L. J. Feistel & Co., Inc. succeeded to the original partnership as of January 1, 1935. The purposes of the corporation *321 as stated in its certificate of incorporation were as follows: "1. To conduct a general Insurance Agency, Insurance Brokerage and Adjustment Business consisting of and in connection with Fire, Casualty, Life, Marine, Bonds, Automobile, Aeroplane, Accident, Health, Fidelity, Credit, Burglary, Physicians Malpractice, Plate Glass, Elevator, Steam Boiler, Tornado, Wind Storm, Sprinkler Leakage, Guaranty, Indemnity, Employers Liability, and any other form or forms of insurance which now are or which may hereafter become lawful." The authorized capital stock of the corporation was $20,000 consisting of 200 shares of the par value of $100 per share. Only 5 shares of the authorized capital stock were ever issued. They were issued as follows: 3 shares or 60% to Leo J. Feistel 1 share or 20% to Herman M. Yost 1 share or 20% to Alice V. Feistel The stockholders of L. J. Feistel & Co., Inc. elected the following directors who remained directors during the life of the corporation: Leo J. Feistel Herman M. Yost Alice V. Feistel The directors of L. J. Feistel & Co., Inc. elected the following officers who remained officers during the life of the corporation: Leo J. Feistel - *322 President and Treasurer Herman M. Yost - Vice-President Alice V. Feistel - Secretary Application was made each year during the life of the corporation to the New York State Insurance Department for authority to carry on the insurance brokerage business. These applications (which were granted) stated names, addresses, and stock ownership of the officers and stockholders. For the calendar years 1937 and 1938 the corporation received commissions on insurance premiums, had gross income, and paid salaries to petitioner, H. M. Yost and other employees as follows: Commissions
Total
Salary L. J.
Salary
Other
on Premiums
Income
Feistel
H. M. Yost
Salaries
1937
$33,231.65
$33,233.15
$16,111.57
$4,053.44
$3,111.00
1938
29,306.80
29,311.40
15,088.10
3,936.99
3,886.88 During these years Alice Feistel was not active in the corporation and received no salary or other compensation from the corporation. In 1938 petitioner and Yost decided they could not get along in business and decided to dissolve the corporation. On October 14, 1938, the corporation issued its check for $1,000 to H. M. Yost and cancelled some indebtedness which he owed *323 to the corporation, in purchase of his interest in the corporation. The payment of $1,000 was charged to petitioner on the corporation's cash receipts and disbursements book. On January 31, 1939, the corporation was dissolved. Leo J. Feistel and Alice V. Feistel decided to continue the business as a partnership. Partnership agreement was entered into and signed between the two partners, Leo J. Feistel and Alice V. Feistel. This partnership agreement was as follows: "AGREEMENT made this 2nd day of January, 1939, between LEO J. FEISTEL, of 19 Sutton Place, Verona, New Jersey, herein called the party of the first part, and ALICE FEISTEL. of 19 Sutton Place, Verona, New Jersey, herein called the party of the second part. "WITNESSETH: "WHEREAS the parties hereto have agreed to become co-partners, it is mutually agreed as follows: "1. The parties hereto shall, as partners engage in and conduct a general insurance business. "2. The name of the partnership shall be L. J. Feistel & Co. "3. The term of the partnership shall commence on the 2nd day of January, 1939, and shall continue until terminated by mutual consent. "4. The parties hereto shall have the following interest *324 in the partnership herein: LEO J. FEISTEL 60% ALICE FEISTEL 40% "5. The parties hereto shall devote their time, skill and efforts to the management, promotion and conduct of the business in furtherance of its objects during the continuance thereof, and shall receive as salary such sum as they may mutually agree upon. "6. That a full and accurate account of the transactions of the partnership shall be kept in proper books which shall be kept at the place of business of the partnership and each shall at all times have access to and may inspect and copy any of them. "7. That the partnership shall open a checking account, and that all the funds belonging to said business shall be deposited in the bank and be subject to withdrawal by check signed by the party of the first part. "8. That at the termination of the partnership all the net proceeds from the liquidation of said business shall be divided in accordance with the interest of each party in the partnership. "IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written. (Signed) L. J. Feistel (Signed) Alice Feistel" Certificate of doing business under the trade name *325 of L. J. Feistel & Co. was filed with the New York County Clerk, signed by Leo J. Feistel and Alice Feistel. Application was made with the New York State Insurance Department for authority for the new partnership of L. J. Feistel & Co. to carry on the insurance brokerage business for the year 1939. The bank account of L. J. Feistel & Co., Inc. was transferred to the partnership of L. J. Feistel & Co. Assets transferred by the corporation to the partnership was a check in the sum of $8,274.41. Petitioner, after formation of the partnership, continued to give his wife an allowance for household expenses and for the support of the children on the same basis as in previous years. During the taxable year Alice V. Feistel entertained certain women, whose husbands were in business, at bridge parties and otherwise. The insurance business of some of these husbands was subsequently obtained by the partnership. Alice V. Feistel took no active part in the business though she and her husband discussed affairs of the business at times at home. Occasionally she visited the office. Until 1942 L. J. Feistel & Co. kept no general ledger or other record showing the capital investments of the *326 respective parties in the business. During the taxable year a loose-leaf cash book showing receipts and disbursements was maintained. Cash withdrawals by petitioner and his wife were not charged to them separately on the disbursements sheets but were entered in one column headed "A. F.-L. J.F." The cash disbursements sheets for each month of the taxable year contained a summary of the kinds of disbursements made during the preceding month which summary listed only Leo J. Feistel. Subsequent to the taxable year, the words "alice Feistel" were added in pencil after petitioner's name, at the direction of petitioner's accountant. A typed recapitulation prepared at the end of the taxable year purported to show the total monthly withdrawals separately chargeable to the petitioner and his wife. Some of the withdrawals charged to Alice Feistel were disbursed in payment of the expenses of petitioner's household. In addition, some of her cash withdrawals were used for said purpose and for support of their two children. In June 1939, petitioner agreed in writing to purchase a property at Lake Mohawk, New Jersey, from Louise Bertha Schmits for $4,000. On May 12, 1939, a check was issued on the *327 account of L. J. Feistel & Co. for $50 in favor of M. F. Clark and on May 26, 1939, a check was issued on the same account in favor of Margaret F. Clark in the sum of $150, both being in part payment of the purchase price of said property. On June 23, 1939, a check on the same account was issued in favor of Louise Bertha Schmits in the amount of $3,815, being the balance of the purchase price, all of which checks were charged against petitioner's withdrawals from the business. On June 20, 1939, Louise Bertha Schmits executed a deed for said property in favor of Alice Viola Feistel. The earnings in 1939 of the partnership known as L. J. Feistel & Co. were principally due to the personal efforts of petitioner, Leo J. Feistel. Opinion BLACK, Judge: The amount of the net income of the insurance business conducted by L. J. Feistel & Co. during the year 1939 is not in dispute. The question is: To whom is such net income taxable? We shall assume as a fact that the written agreement entered into by petitioner and his wife, Alice V. Feistel, on January 2, 1939, created a valid partnership between them under the laws of the State of New York. The Commissioner has not cited any case *328 to the contrary and we shall assume that a valid partnership under New York law was created. But the fact that a valid partnership existed between petitioner and his wife, under the laws of the State of New York, does not mean that the income of the partnership will be taxed 60 percent to petitioner and 40 percent to Alice Feistel, as petitioner claims it should be. The income of the partnership, consisting mainly of insurance commissions, was due primarily to the personal services of petitioner. As we pointed out in , there is a line of cases which holds that a husband whose earnings are from personal services such as attorney fees, accounting fees, insurance commissions, or engineering fees may not make his wife a partner and have his personal service earnings taxed as partnership income. We pointed out that among such cases are ; ; ; , affirming Board of Tax Appeals Memorandum Opinion; ; *329 , affirmed . A study of these cases will, we think, reveal that they rely largely upon the principle announced by the Supreme Court in , where the Court stressed the power to tax income to him who earns it, and stated that no anticipatory arrangement, no matter how skillfully devised, can avoid this. The Court said that the fruit must be attributed to the tree on which it grew. See discussion in Cf. We are unable to distinguish the instant case from the line of cases which we have cited above. It is true, of course, that there are some differences in the facts but that is true of most cases. It is seldom that there are two cases where the facts are the same. It is the controlling principle to which we must endeavor to give effect, even though there are some differences in the facts. Only where the facts are so widely different as to justify a distinction, should we make one. In arguing that we should reverse the Commissioner in the action that he has taken in the instant case, *330 the petitioner states in his brief as follows: "When the earnings of a business are due primarily to the efforts of both partners and to the capital invested by each of them, a partnership should be recognized for income tax purposes regardless of the fact that it happens to be a family partnership." We think the foregoing proposition is sound enough and we do not find ourselves in disagreement with it, but the difficulty is that we do not think that it fits in with the facts of the instant case. In the first place, as we have already found in our findings of fact, we think the facts of record show that the earnings of the partnership were due primarily to the personal services of petitioner. Both petitioner and his wife, Alice, testified and we think it is clear from this testimony that Alice did not render any substantial services to the partnership. The extent of her activity in the business was to meet club women at bridge parties and other social activities. "These women," said petitioner in his testimony, "have husbands who are in business and through her contacts I have made acquaintances with people which eventually developed into accounts." The witness then named some accounts *331 which he said were brought to the partnership in this manner. We think it would be too far fetched to characterize this sort of activity as being of the kind as to justify classifying the partner as one who was rendering active service in the business. Nor do we think there is any showing that the use of capital was a substantial income producing factor in the business. On the contrary, we think the facts negative any such conclusion. The corporation of L. J. Feistel & Co., Inc., which was the immediate predecessor of the partnership had an authorized capital stock of $20,000 divided into 200 shares of a par value of $100 each but only 5 of these shares were ever issued. The first meeting of the board of directors of the corporation as shown by the minutes which are in evidence show the following proposition which was submitted and accepted: Leo J. Feistel, now being in the insurance business and having a large and valuable list of expirations, offer to sell and transfer these to L. J. Feistel & Co. Inc., in return for the issuance to him of five shares of capital stock of L. J. Feistel & Co. Inc., and $500.00 in cash. Petitioner lays much stress on the fact that in the early *332 days of the business, back in 1930, before the corporation was formed that Alice Feistel advanced out of her own separate funds at different times amounts which aggregated $3,000 and that these amounts were never repaid to her and when the corporation was organized in 1935, she was given one share of stock which represented a 20 percent interest because of the advancements which she had previously made to the then partners, L. J. Feistel and Herman M. Yost. We think the facts do establish that in the early period of the partnership between L. J. Feistel and Herman M. Yost, Alice did make loans from time to time to the partnership which aggregated $3,000. This was during the depression years, the partnership was hard up for funds and she made the loans out of her own separate funds. These loans were never repaid and when the corporation was organized in 1935 she was given one share of stock or 20 percent interest in the corporation in consideration of the money which she had previously loaned the partnership. We agree with petitioner that if any dividends had been declared and paid by the corporation during its life that Alice Feistel would have been entitled to her share of such dividends. *333 However, no dividends were paid, the net earnings of the corporation having been largely absorbed by the salaries of the two who were active in the business, namely, L. J. Feistel and H. M. Yost. This is another factor which we think shows that the earnings of the business were largely what are commonly referred to as personal service earnings. As we have already pointed out, the partnership succeeded the corporation in 1939, and the earnings of that partnership being primarily due to the personal services of one partner are taxable to him under the authorities which we have cited. We think our holding in this respect is not in conflict with , reversing our decision in . The court its opinion in that case pointed out the basis on which the Board of Tax Appeals had held that the income of the partnership was all taxable to the husbands in the following language: The opinion of the Board stated that the arguments against treating the earnings as belonging wholly to the husbands "would be persuasive of the ultimate conclusion contended for by the petitioners if we were considering taxability of the *334 distributive shares of a trading partnership the income of which is dependent upon the use of capital." It also stated: "The picture here presented, however, is that of a partnership deriving its income from personal service." The court then went on to point out wherein it thought we erred in holding that the income of the partnership of Humphreys and Day was due primarily to the personal services of Adrian C. Humphreys and W. Jule Day and in that respect the court said: The records of the partnership showed that it employed fourteen accountants, none of whom were lawyers, and all but two of whom had been employed at some time by the Bureau of Internal Revenue. It also employed at least eighteen other persons, twelve or fifteen of whom were employed at one time in the New York office. From these and other facts stated in the opinion the court reasoned that the use of the capital furnished by the wives was an important income producing factor in the partnership and that the income from the partnership should be taxed in the proportions that the parties had agreed upon in the partnership agreement and not on the basis that the earnings of the partnership were the personal service *335 earnings of Adrian C. Humphreys and W. Jule Day. We have no such facts in the instant case as the court pointed out were present in the Humphreys case. So far as the record of evidence in the instant case shows, the earnings of the partnership were due primarily to the personal services of Leo J. Feistel. This, we think, brings the case within the ambit of such cases as ; ; and , and we so hold. Decision will be entered for the respondent.